Murphy vs. Murphy et al.

No. 11,120.

ROBERT MURPHY VS. WILLIAM E. MURPHY ET AL.

| 45 | 433 |
| 45 | 1482 |
| 45 | 433 |
| 46 | 709 |

1. A written agreement, intended to evidence a final settlement of accounts, which is prefaced by an enumeration of various properties owned by the contracting parties jointly and separately; and which contains a statement to the effect that an undivided one-half interest in each is to be transferred to the other, so that " each will own an undivided half interest " in all, taken as a whole, is rather to be given the effect of a confirmative or recognitive act, explanatory of the *status* of the property, than that of a new title which is coupled with a condition, or depending for its completion upon the happening of a future and uncertain event.

2. Upon this recognition of title a suit may be brought by either party for a partition of the common, or partnership property.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*W. S. Benedict* for Plaintiff and Appellee.

*Armand Pilie* and *Jerome Meunier* for Defendants and Appellants.

*Wm. E. Murphy in propria persona:*

1. An action brought by parties claiming to own an undivided interest in an immovable against parties possessing and claiming to own the whole immovable, and asking judgment decreeing their ownership and for partition, combines the double character of a petitory action and an action for partition.

2. To the petitory action defendants are entitled to plead the prescription of ten years, although an action for partition is only barred by thirty years. LeBlanc et als. vs. Robertson et als., 41 An. 1023, and authorities therein cited.

3. When one of the co-heirs or co-owners has enjoyed the whole or part of the property claimed separately, he or they who have thus separately possessed can successively oppose the suit for a partition if their possession has continued thirty years without interruption. C. C., Arts. 1305, 1306.

4. There are cases in which a man may innocently be silent, but in other cases a man is bound to speak out, and his very silence becomes as expressive as if he openly consented to what was said or done and had become a party to the transaction. Thus, if a man having a title to an estate which is offered for sale, and knowing his title, stands by and does not forbid it, he will be bound by the sale, and neither he nor his privies will be at liberty to dispute the validity of the purchase. 1 Story on Equity, 375, Sec. 385.

5. Where one, by his words or conduct, wilfully causes another to believe in the existence of a state of things and induces him to act on that belief, the former is concluded from averring a different state of things existing at the same time. C. C., Art. 1810, 1811, 1812; McMasters vs. Banking Co., 1 An. 12; Lippmins vs. McCramie, 30 An. 1251; Kerwin vs. Insurance Co., 35 An. 34; Girault vs. Zuntz 15 An. 684; Montagne vs. Weil Bros., 30 An. 50.

28

6. Parties who lay by for a long period of time without asserting their claim, who suffer the circumstances which accompanied a transaction to fade from memory of the vicinage even of those concerned in it, ought not to complain that less rigid evidence is required, nor ought they to gain by their own acquiescence while the transactions were yet recent and when more complete evidence might have been obtained. Baker vs. Towles, 11 La. 433; McGehee vs. McGehee, 41 An. 663; Davenport vs. Labauve, 5 An. 141; Wood vs. Egan, 39 An. 685; 35 An. 1006; 7 An. 555; 14 An. 317; 37 An. 95; Succession Robb, 41 An. 247.

7. The Supreme Court of the United States, in the case of Cressy vs. Myer et als. —Reports U. S., 1891, in a case under similar circumstances, says: "Considering that such a suit is proper, it still remains in the nature of a personal action by one individual against another, as against such a suit laches and limitations are in a court of equity a sufficient defence—the settlement was made in 1847. Thirty-six years thereafter this bill is filed. If the time for full payment is subtracted, this suit was commenced nineteen years afterward. Limitation and laches forbid that this suit shall be sustained."

8. An action to enforce an obligation before its condition is fulfilled will be dismissed. Groning vs. Krumbaar, 13 L. 404; Williams vs. Benton, 10 An. 158; Priollaud vs. Hurst, 18 L. 537; 1 N. S. 592; 3 M. 326, 513; 6 L. 536; Fernandez vs. Soulie, 28 An. 31; Avendano vs. Arthur, 39 An. 316.

9. An amendment of a judgment without a new trial is irregular. The Code of Practice, Art. 547, provides in what cases judgments may be amended by the court until after having been signed. 1. To alter phraseology but not substance. 2. To correct errors of calculation if more had been given than was demanded or if the party in whose favor judgment was given had been ordered to pay costs. Except in cases above proscribed courts can not alter their judgments, but must direct a new trial in order to revise their judgments. Miller vs. Chandler, 29 An. 91; Whipple vs. Hertzberger, 11 An. 457. C. P.; Art. 547, 548; Flint vs. Curry, 6 L. 548.

---

The opinion of the court was delivered by

WATKINS, J. This suit has for object a partition of sundry pieces of real estate situated in New Orleans, between the plaintiff and his brother, one of the defendants; and in aid and furtherance of the partition, the annulment of a certain donation of a portion of same, by the latter to his daughter, Citye Anne Murphy.

Demand is also made of the defendant, W. E. Murphy, for the settlement and liquidation of the rents and revenues of the property since 1880, for the appointment of a receiver and other appropriate redress and relief in the premises.

Defendant W. E. Murphy first answered and plead a general denial, setting up a claim in reconvention for a large sum, as the proceeds of the sales of property the plaintiff had made of his (defendant's) share of the property, real and personal, and also for revenues.

In a supplemental answer defendant specially denies that the properties designated and described in the written act, of date June 14, 1855, on which the plaintiff relies, were or are held in common by and between them, with the exception of those mentioned in the agreement as common or partnership property. He further avers that the properties so held in common, and others which were owned by him individually, though alleged to be partnership property, were mortgaged and sold by the plaintiff without his consent or knowledge, during the years 1859, 1860 and 1861; that the proceeds thereof have never been accounted for since; and that on that score the plaintiff is indebted to him in the sum of $59,725. And, in the alternative, the defendant avers that, in case those properties shall be decreed to be partnership property, the plaintiff is indebted to him one-half of that sum; and the further sum of $6650 for the proceeds of the property standing in his name alone. His further averment is that, of the properties designated on the exhibit annexed to plaintiff's petition, one belongs to his daughter, Citye Anne Murphy, and to which she derived title by inheritance from her mother, and that another belongs to the children of his (defendant's) daughter, and to which the latter derived title by marriage contract.

Citye Anne Murphy answers and avers that she is the sole and exclusive owner of the property situated on Marais street, between Ursulines and Bayou Road streets, and that she derived title thereto by a donation made to her by her father, W. E. Murphy, in 1889, and of which said donor was sole owner at the time of donation, and that his title is evidenced by recorded titles. She avers that she is joint owner with the children and heirs of Mrs. Hailliot of the property situated on Villeré and Robertson streets, between Ursulines and Bayou Road streets, they having inherited same from the mother of W. E. Murphy and their grandmother, as evidenced by recorded titles.

On the trial, and after a protracted examination of the testimony, the district judge reached the conclusion that there is not one of the properties that are listed in the partnership settlement touching the title to which he felt willing to enter a definitive judgment, except that indicated on the exhibit as No. 3, it embracing three lots on Marais street, and with reference to which he held " that under the terms of Document B "—one of the exhibits that is annexed to plain-

tiff's petition, and that on which he relies for title—"the plaintiff is entitled to a decree of partition," etc., only *pro tanto*.

In pursuance of that theory he rendered a judgment recognizing the joint and equal ownership of the two brothers Murphy in said property, "the same being the only properties remaining undisposed of on which the court can decree"—the rights of all parties being reserved in respect to other properties.

He further decreed that a partition be made by licitation, on terms of cash and credit, and that all matters of account arising since 1st of January, 1880, be reserved for adjustment and settlement in the partition, to which all such matters were reserved and referred.

From that judgment the defendants have appealed; and in this court they plead, in the alternative if it be found as a fact that the property in question is a *partnership* asset, the prescription of ten and thirty years *acquirendi causa* on the face of the transcript.

Plaintiff and appellee answers the appeal, and, practically, demands the amendment of the judgment appealed from, so as to conform to the prayer of his petition, save and except in some unimportant particulars.

With regard to the pleas of prescription urged, we have examined the record in vain in an effort to discover any proof in support of the defendant's pretensions. During the years that have intervened since 1855, when the partnership settlement now invoked was entered into, the plaintiff and defendant have, alternately, dealt with these properties as owners and agents, collecting rents and making sales, without one appearing to have consulted the other. At any rate, and without interpreting their acts as affecting their other rights, this course of dealing indicates such a community of interests as will preclude the assertion of adversary right, or possession on which title by prescription can be founded. This case does not come within the principle announced in LeBlanc vs. Robertson, 41 An. 1023, but is controlled by the provisions of R. C. C. 1304.

The testimony shows that the two brothers were jointly interested in business, and that the various properties were acquired, whether in the name of one or the other, with, at least, an understanding that their acquisitions were to be mutual and in common.

In this situation, no starting point for the prescription *acquirendi causa* can be discovered. Hence, we are of the opinion that the plea is not well founded.

The written agreement, which is relied upon by the plaintiff as a title, was evidently intended by the parties as " a final settlement of accounts, property and interests " between them, accompanied as it was with a complete and extended statement of their "real estate, slaves, assets and liabilities," upon each of which a valuation was placed; and an examination of the evidence has even more satisfactorily demonstrated the correctness of that view. But we are equally well satisfied that all the properties described in the act, with the exception of the one dealt with in the opinion of the district judge, have been disposed of, and placed beyond the reach of the court; and we are likewise satisfied that it is covered by the agreement, and was properly treated by the district judge as partnership property.

Defendant's counsel, however, most strenuously insist that the agreement does not confer an absolute or unqualified right, but simply an inchoate and contingent right, making the transfer dependent upon the happening of a condition, an " unforeseen accident," which never happened; an uncertain future event, on account of the non-occurrence of which, title did not pass from one party to the other.

The paragraph relied upon is couched in the following terms, viz.:

" We, the undersigned, hereby agree that this account, made in duplicate, shall be considered and accepted as a final settlement between us, one-half of the whole property and slaves in the name of W. E. Murphy, it is hereby agreed, shall be transferred and passed into the name of Robert Murphy, and one-half of the property and slaves in the name of Robert Murphy shall be transferred and passed into the name of W. E. Murphy, so each will own an undivided half interest.

" This transfer to be made before a notary, at such time as either party may wish; but in case any unforeseen accident should prevent such a transfer being made, then this present agreement shall be considered as a sale from one party to the other, as mentioned above."

In the district court the same view was presented, but it did not convince the judge a quo, for in his written reasons for judgment he employs this language, viz.:

" Defendant's counsel have argued with learning and ability that that agreement depended upon a condition which had never happened, to-wit: the passage of the notarial act referred to in sad

agreement. I have examined the authorities cited, but it would serve no useful purpose to discuss them in this opinion. The parties contemplated a notarial act, but they were fully agreed on every matter of detail, and in the agreement, which they wrote and signed, they stipulated that if a transfer by the notarial act referred to should not be passed, that ' then this present agreement shall be considered as a sale from one party to the other; as mentioned above,' and the last clause providing in the contingency of the death of either party for the retention of ' the portion of the deceased's property,' for the benefit of his heirs, etc., indicates their intention and will that the property was joint property."

While not accepting the theory of the judge *a quo*, entirely, we are constrained to regard the instrument, taken as a whole, as having rather the effect of a recognitive act, or counter letter, explanatory of the *status* of the parties, as well as of the property, than as a title to property, coupled with a condition, or depending for its completion upon the happening of a future, uncertain event. The act does not purport the conveyance of a new title. It does not evidence the transactions of strangers. But it recognizes a *status quo*. It is a statement of accounts then existing between the brothers, and purports a full settlement thereof. This settlement is prefaced by an enumeration of all the real properties held by them jointly or separately, and for the adjustment of which provision is made in the quoted provisions of said act, *supra;* and it declares " that this account, *made in duplicate,* shall be considered and accepted as a final settlement between us, one-half of the whole property and slaves *in the name* of W. E. Murphy, it is agreed shall be transferred and passed *into the name of Robert Murphy,*" etc., and *vice versa.* The plain and manifest sense of that declaration is that the titles standing *in the name* of either or both of said parties was, *originally, common* property, in which each was owner of one-half interest, and that to effect a settlement and make titles conform to the facts, this specification is made. This theory is further confirmed by the fact that for many years prior to date of settlement, most intimate and confidential relations had existed between the brothers, and in the acquisition of property, real and personal, their means and industry were indifferently bestowed, so that it is impossible from the record to accurately determine who contributed the larger proportion thereof. This was the apparent situation when their de-

parture for Europe rendered necessary the statement of their affairs as a mutual protection and safeguard. And if there be any doubt as to the correctness of this interpretation of the act, it is evidently dispelled by its concluding sentence, namely: "It is further agreed between the undersigned that in case of the death of either party, the surviving one shall have the right of holding the *portion* of the deceased's property for the benefit of his heirs for the term of —— years, so as he can dispose of the same to the best advantage; that is to say, the survivor shall not be forced to sell the property *so held in common* for the above named term of —— years."

In so far as the objections and estoppels which the defendants urge against the assertion of title by the plaintiff, consisting, as they do, of a solitary letter of plaintiff written in 1862, and his attestation of a marriage contract purporting settlement by W. E. Murphy of part of the common property on one of his daughters, it seems sufficient to say that these minute circumstances standing apart from the great multitude of prior and subsequent transactions can not be considered as exercising a controlling influence over them. The letter was written during the late war, and was addressed to an agent giving instructions about the property standing *in the names* of the brothers indifferently, and without *some* confirmatory proof of *other* intention on the part of Robert, it ought to be construed conformably with the terms of the written agreement, and not adversely to it.

In so far as the fact of the plaintiff having attested a marriage contract to which the defendant's daughter was a party is concerned, ample answer is that it only stipulated a mortgage on the properties in question, and not a sale; and the mortgage having lapsed, the property is again released. His assent to the mortgage was only tantamount to a waiver of his rights in favor of the mortgagee and constitutes no bar to his assertion of title as against the mortgagor.

In so far as the alleged donation *inter vivos* by the defendant, W. E. Murphy, to his daughter, Citye Anne Murphy, is concerned, we find, after a careful examination of the record, no trace of it, and can not for that reason express any opinion in reference thereto.

We are of opinion that the judgment appealed from is correct and it is therefore affirmed.

Rehearing refused.